Good morning, counsel. Good morning, Your Honors. Russell Handy representing the appellant, in this case, Carina Ruiz. I'd like to reserve six minutes for rebuttal argument, if I might. What's your clock? Thank you. First, we got to speak first and last, and all of our arguments are in the briefs, but there is something that I want to clarify.  Or the way we characterize the facts. We've kind of gone along with the story that they accommodated her twice, and what we're talking about is the third request for accommodation, and that's not actually correct. Reading through the materials again, they've never accommodated her, not even once. When she took her initial one week off, that was her accumulated sick days. She was entitled to that. That's not an accommodation. Well, getting leave off can be an accommodation if that's what the employee needs in order to accommodate the disability. Right, but there's a distinction between the term of our accommodation to accommodate a disability under the ADA and under FEHA, and taking your accumulated sick days, which you're entitled to. She was contractually entitled to that. That's not an ADA accommodation. That's all I'm saying. That's a different, as you said, that's a different approach than you took in the district court. Well, it was just characterization. All the facts are the same. Well, whether it's an accommodation or not is a very important characterization, and so if you've already acknowledged in district court that that was an accommodation, it's difficult to come here now and say it wasn't an accommodation. No, we've never acknowledged that it's an accommodation. What I'm saying is we just haven't tackled that argument. When they say this is her third request, we said it was her second request for leave, but my point here is that what we should have hammered on is even though it was her second request for medical leave, it's not an accommodation. She only asked for one accommodation under the ADA or under FEHA, and that was when her sick days were up, the first week, and then she took 12 weeks of leave that she was entitled to under the contractual obligations she had. Being an employee for more than a year, she was entitled to 12 weeks of unpaid medical leave, according to their own policies, and maybe even entitled to under FEMA, and they granted it to her on that basis and told her that she had that and that she had ultimately exhausted it. So when she came back and said, my doctor says I need five more weeks, I need to have this other appointment to get cleared, that was her first request for an accommodation that she wasn't entitled to statutorily or contractually. She was invoking her rights under the ADA. She said, I need five weeks, and that was not granted, and so there was really no ADA or FEHA accommodation ever given her. That's the only point I'm going to make. So at that point, is it your position that your client met the definition of a qualified individual? Absolutely. The definition of a qualified individual under all the statutes here is a person who can do the essential functions of her job with or without an accommodation. And in this case, the requested accommodation was medical leave to heal, and this court, the Ninth Circuit has said repeatedly, that is an accommodation. Are there cases that say if you're totally disabled, you're not a qualified individual? You mean with no prognosis of ever getting better? I think there are cases that say that. None of them were cited in this particular, in any of our briefing. All of them focused on what about when someone's temporarily totally disabled, meaning that they're on the mend, they're going to heal, and how do we deal with that unique situation? What about if they're totally disabled at the time that they request the accommodation? I thought that that was considered inconsistent with the ability to request accommodation if you're not a qualified individual at that point. What case are you relying upon to support the proposition that if you have a total disability with a prognosis to heal that you are entitled to accommodation? What case is that? Nunes v. Walmart is the case. And this is the case that says, quote, unpaid medical leave may be a reasonable accommodation under the ADA. Is that a totally disabled person? Yeah, this is a person who could not do the job at all, needed medical leave in order to heal, right, to recover, to seek treatment. And so the court said, and that was one of the issues, and the court said unpaid medical leave may be a reasonable accommodation under the ADA. Even an extended medical leave or an extension of an existing leave period may be a reasonable accommodation if it does not pose an undue hardship on the employer. And remember, this is one where different doctors gave estimates of eight months out, nine months out, and the Nunes court said, look, focusing on a disability during the leave is an error because that's the whole point of unpaid medical leave to heal is that you are injured. I mean, if you're in a car accident and you're going to be laid up for a week and you're in a body cast or something, of course you're completely unable to work, but you're going to heal, and so this is a classic accommodation to give you unpaid medical leave to heal.  are completely disabled the day after the accident. They can't work. So to say you're not qualified because you can't work right now, that's improper in the Ninth Circuit. Nunes said the district court erred in determining that Nunes was totally disabled on the date of her termination. So the court did not consider Nunes to be totally disabled on the date of her termination. Do you agree? I don't know that I agree with that, Your Honor. And what are you referring to? I'm referring to the language of the court on page 1246. It says the district court also erred in determining that Nunes was totally disabled on the date of her termination. So this was not a case where this court was looking at a totally disabled person. Okay. Well, I don't know how material that was to their holding because she clearly could not go back to work, and they weren't talking about any accommodation like come back and we'll modify your work schedule, do other things. This was a case where she could not come back, and they were asking, you know, what would be appropriate. This is the one where she had those what they call syncopal episodes, and she had these constant problems, and it was affecting her so much that she couldn't work and she needed to get treatment. And she was actually fired before she ever got it finally resolved. And soon thereafter she got it resolved, and the Ninth Circuit said, look, unless it's a hardship, and that's the way it should be, that it's always a defense. If it's going to be a hardship and we can't hold the position open, right, that's a legitimate defense. But if it's not a hardship, right, we're not paying you, you get unpaid medical leave to heal, and as long as there's a decent prognosis that you're going to heal, right, then this is what the ADA requires. It's just what the statute requires. And so focusing on someone's disability during leave, saying you can't work right now, therefore you're not qualified, that's just not the way to look at it. It's improper. And all these cases say that, and there's more than the Nunez cases. There's the Lucky versus Hanson case and all these other ones that we cited in our briefs. And so the question is, was it reasonable to expect that she would heal? Was there a good prognosis that someone with a broken ankle is eventually going to be able to return to work? And, of course, there is. And so that's why I wanted to. I want to ask you a question based on just the record. I'm just trying to remember, her job was more of a desk-type job, correct? It was. She was an outreach and missions counselor. And so it did require some traveling to meet with. This is trying to recruit people between the ages of 16 and 24 in order to be part of the U.S. Labor Job Corps program. And so there was a lot of stuff on the phone. There was a lot of stuff at the desk. There were some meeting people and going to certain sites. And so it was a combination. There was no heavy lifting, nothing like that. So it was largely clerical mixed with some outreach. Counsel, what's your response on the retaliation issue to the claim that we should affirm because accommodating your client would have breached a contract with Cornerstone? I believe opposing counsel says we should reach that issue. On the undue burden that you're talking about, because of their contractual obligation, it would be an undue burden. Well, basically we have two points to that. One is that I don't think we should read it. I think Judge Rolison said in the last oral argument, she says, normally if a district court doesn't flesh out the issue, we don't like to weigh it in. And here the district court said we're not going to reach that issue. But the real reason why I think the court shouldn't reach that issue is that there is a number of statutory factors that have to be considered to reach that issue. And this is found at 29 CFR 1630.2 sub P sub 2. And I don't want to go through all of them. But the nature and the net cost of the accommodation, the overall financial resources of the entity, the type of operation, all these things. And it's not in the record. So not only was it not developed and not in the record now, it's probably one of the reasons why the court didn't reach it. But the court didn't reach it. I think it would be inappropriate and unfair to try to determine what the Ninth Circuit has called an intensely factual issue without a record. It would be just, I don't think it would be appropriate for this court to reach that. And I see that I have only 520. If I could save the rest for rebuttal. Thank you very much. I'm very pleased to call Paul Sorrentino, Jackson Lewis, representing Paradigm Works. Paradigm Works is a subcontractor with regard to the services provided to under the auspices of the Department of Labor. It is a small company. Why is that important? Because this plaintiff did not qualify under either FMLA or CFRA. And that is the reason that the leave of absence was granted gratuitously under the policies of the employer, Paradigm Works. Why wasn't she qualified? Because in the San Diego area, in fact, in Southern California, there was only five employees. That includes the plaintiff. But that doesn't have to do with whether she's qualified. Under the definition of the act, she has to be qualified to perform the essential functions of the job. So was she qualified in that sense under the ADA? Yes, and I misspoke. I meant to say she was not eligible for leave under those acts. Was she a qualified individual to perform the essential functions of her job? And the answer is absolutely no, she was not a qualified individual. She herself admitted that she could not perform any of the functions of a job. While she had the broken ankle. Correct. And that condition went on for 10 months. I have to take issue with the comment about the first accommodation. Two things I want to say. First of all, and I will tell you that the first accommodation was from November 16, 2015, to November 20, 2015. It's in the record under the supplemental excerpt for record at page 331. The note from the doctor specifically says that they're requesting this person, the plaintiff, to be off work for a temporary total disability. Whether or not she was entitled to time off for sick time or for vacation time or for nap time, it doesn't matter. Because when we look at the final result, was she absent from work and how did that affect the contract? Which was the sole reason for her termination. Lala tells us, and that's a Ninth Circuit case, that the termination has to be because of her disability. She was not a qualified person with a disability. When the second note, which is exactly like the first note, that's at the supplemental excerpt for record at 303, was issued for November 20, 2015 to February 22, 2016. That's 12 weeks. We did not, my client did not consider her disabled or not disabled. They just simply granted the leave. So your view is she could have been terminated then because you're a small company and she had a broken ankle and 12 weeks is too long a time? My view is that under the contract, after 30 days, the answer is yes. This is as my friend Jack would say, no good deed goes unpunished. That doesn't mean she's not qualified. That's your reason for termination was not based on her disability. It was based on the contract. Correct. And that's important because in the Lala, that's what the reason has to be. But we have to look at the days here because 12 weeks, that was 84 days, plus the five days gets us to 89. Now she comes in on February 18 with a third note. Now her leave didn't expire until February 22, but on February 18 she comes in. That's at the supplemental excerpt for record at page 313. She comes in and she says, I need this to be extended to April 1st. The same exact note. What's important about that is there is no prognosis. There's no prognosis. Well, there's no guarantee she's going to be well after the five more weeks. Correct. And it's the same language used in the other two notes. That she's totally disabled. And with no prognosis. And by the way, I would expect that someone would, most people would, recover from a broken ankle. But not everybody does. Not everybody does. Is this one of those people? I don't know and we still don't know. Counsel, there's a case, I remember it well because I tried to get the Supreme Court to take cert in it. And the Supreme Court didn't. A case called Humphrey. The woman who had the mental issues and thought bugs were, I don't have issues with bugs in my hair, obviously. It seems to me that's a really tough case for the employer here, Humphrey. It didn't get a lot of play before the district court. But in the brief to this court, understandably, they made a lot of play out of the Humphrey case. Can you explain how you distinguish that case where someone thinks they have bugs crawling on their head and they can't leave the house versus a broken ankle or broken foot? Sure. In this particular case, the plaintiff was declared by her doctor to be totally disabled. Temporarily totally disabled. By her testimony, this plaintiff said, I could not perform, I took the deposition, I could not perform the essential functions of my job. And she further said, when I asked her in deposition, and it's part of the record, she said, I don't know if the doctor will release me on April 1st. But juxtapose that with regard to what's also in the record, the testimony of Willie Marshall, he's the owner of the company, in which he testified that the project manager, this is at supplemental excerpt of record, page 267, it's lines 8 to 10. The project director for the Department of Labor comes to Willie Marshall and says, I'm quoting, it's unacceptable to have a vacancy for this period of time. And asked Mr. Marshall, what are you going to do about it? The problem is four other jobs are at risk. We're in breach of contract, my client's in breach of contract, and yes, it put itself in breach of contract to grant these 89 days. And by the way, when the termination occurred on February 29th, that was another seven days. Up to 96 days. And there was another four weeks that she was requesting after that, because it was five weeks from the 22nd. Ninety-six days in breach of contract, which the contract requires a cancellation of the contract, termination of the other employees, and then this company can't renew its contract. Let me get back to my question. If you want us to go your way, we've got to distinguish Humphrey. How do we do that? Under Samper v. Providence St. Vincent Medical Center, which is a Ninth Circuit case from 2012, if one is not able to be at work, one cannot be a qualified individual, particularly where the essential job functions require teamwork or face-to-face interaction. So I distinguish it by stating that this person, again, could not do any of the functions of a job. Isn't that the case when anybody has a disability that prevents them from being at work for one day, three days, they hit their head, they have a concussion protocol, they break their ankle, they have a job that requires walking and they can't walk for three days? I mean, wouldn't your argument be the same in every one of those cases? But in this case, there's no job protected leave. In this case, it's a leave of absence that was granted by the employer. In this case, the employer had contractual obligations to staff the office. In this case, the employer had to fill the position. That's the difference. Is your argument that accommodating the employee by allowing further leave would have been a hardship to the employer? Yes, Your Honor, for exactly the same reasons that I've already mentioned. They're in breach of contract. They were willingly in breach of contract to allow her the time to get better. Were they in breach of contract that day one? No, because, Your Honor, at supplemental excerpt of record page 18, which is my client's declaration, he states in paragraphs five and six, he says, the agreement extended, this is the agreement that was claimed that didn't exist, but it's attached to the record. The agreement extended from November 1, 2010 to October 31, 2016. It's the operative agreement. It's Exhibit C. The agreement required that Paradigm staff the San Diego area office with five admissions counselors during the entirety of defective dates of the agreement and, we quote, acceptable staff vacancy period not to exceed 30 days. So, no, they were not in breach on day one. Yes, they were in breach on day 31, and yet they allowed the plaintiff to remain on the leave, believing that she would come back to work on February 22. But the doctor then gave her the February 18 note, which put her out for another five weeks, and my client allowed her another seven days before saying, I have to terminate, I have to fill the position, and this is why the project director said, this is unacceptable. What are you going to do about it? Certainly the contract is not irrelevant, but, I mean, agreeing in a contract as to staffing that can't by itself override the ADA, right? I mean, you can't agree to a contractual obligation that is in conflict with the ADA. Your Honor, I can't, while that's accurate, I can only point to the relevant case law. Severson v. Haughtland, Woodcraft, Inc., 872F3-476, at page 481, Seventh Circuit, 2017. Inability to work for a multi-month period removes a person from the protected class. Lawlor, this Court's decision, Lawlor v. Mount Blanc, North America, LLC, 704F3-1235, at page 1242, Ninth Circuit decision in 2012. I'm not sure if it's 2013. The district court indicated it was a 2013 decision. But here's the quote, a totally disabled person cannot present a genuine issue that she could have performed her job with accommodation. That's the Ninth Circuit rule. The unpublished case of Markowitz v. UPS, this Court's case from, Ninth Circuit case from 2018, last year, a leave of absence of undefined length is not a reasonable accommodation. That's what we were faced with. And in fact, in fact, the plaintiff was totally disabled, status-wise, by her doctor right through September 23 of 2016, a full 10 months. And what did she do when she was finally released to work? She ran off to the EEOC. She filed her complaint. She got immediate right to sue. And she sued us. So I'm looking at the case law and Judge Benvengo looked at the case law, not just from the Seventh Circuit, but from this circuit, from the Ninth Circuit. Under LALA, an employee who was totally disabled was not a qualified individual under the ADA because she could not perform the essential functions of her job. That's the LALA case. And then Kennedy v. Applause, Inc., again, this circuit, the Ninth Circuit case, at 90 F. 3rd, 1477, at page 1482, this Court held that an employee is not a qualified individual where the employee's physician stated that the employee was totally disabled. So what the plaintiff in this case is asking this Court, the Ninth Circuit, to do is essentially overrule your own decisions, your own precedent case law that Judge Benvengo followed. And what, frankly, do in employment law, these are cases that we follow. It's not fair to the employer to do otherwise. I have a minute left. I don't know if you have any questions. I do want to say that it's undisputed that the plaintiff was totally disabled. It's undisputed, based upon the Ninth Circuit case law itself, that the plaintiff was not a qualified individual under the ADA. It's not disputed that the plaintiff was not eligible under FMLA or CFRA because my employer is a small employer. Counsel, do you agree that the only way we can affirm on the retaliation dismissal is to reach a ground that wasn't addressed by the district court? No. I think you start with the number one issue. Was this plaintiff a qualified individual who could perform the essential functions of a job with or without reasonable accommodation? The answer to that is no. What about an argument that that could have been pretextual? Because the district court never reached the ground, correct? And what evidence has the plaintiff ever presented that it was pretextual? Zero. Because the discussions between Willie Marshall and the project director are undisputed. And the contract and the terms of the contract are undisputed. And the breach that my client was in of the contract is undisputed. There was no evidence presented. The plaintiff never presented evidence on that issue. But you agree that the district court dismissed the claim based on a legal error. On? A legal error with regard to the retaliation claim. Based? Based. I don't understand the question. I'm sorry. I'll look at the briefs again. Okay. Thank you, Your Honor. Thank you. Rebala. Yes, thank you. I'd like to clarify a couple of things. Defense counsel said no prognosis that she would ever be better about her condition. He referenced a supposed conversation that my client had with Willie Marshall. I don't know if that doctor will ever release me or will release me on the April 1st date. None of that's accurate. And we cited that repeatedly. If you look at excerpt of record 66, this is volume 2, page 66, my client was very clear that when her leave was up and that 12 weeks was up, she was very concerned because she hadn't had her final doctor's appointment to get released. She called Willie Marshall. This is her testimony. I submitted to them the doctor note that I got. I called Mr. Willie Marshall. I sent him the text message with a copy of the doctor's note. I explained to him I was in between doctor's appointments, that my doctor appointment was going to be in the beginning of March. And so I knew that I had to be back in February, but I hadn't seen the doctor, so I hadn't got a release. And I had to actually force myself to go get that doctor's note. I had to go in early to get it, and they gave them to her April 1st. It was just like a catch-all. But she then said that she told Willie Marshall that he was going to see me earlier, and he'll assess to see if I can go back to work on accommodations before that time even. And this is a conversation they had. And what did Mr. Marshall say? No worries. This is her testimony. He said, don't worry. I know you had a traumatic surgery. Just take your time. That's why she was so shocked when 11 days later she got this termination letter. She's like, I had just called him. I told him that I hadn't seen the doctor to get released. He was going to see me right away. I needed five more weeks is what the note that got. But I could make it even quicker. This is part of that conversation that employers and employees should have about acting in good faith to discuss these things. And he told her, don't worry about it. And then he fired her. And so you want to talk about pretext. We talk about pretext. They never said anything about when they fired her about this contract. That's not in the record at all. In fact, they gave her termination letters. Why? It's in the record. Your 12 weeks are up and you haven't reported. We assume that you abandoned your position. That's what the termination note says. And the other thing that we're talking about when we say that whether or not she was qualified or they gave her notes, they talk about this, that they were in breach after 30 days. The thing is that they gave her this leave. She was entitled to this leave. And if they couldn't do that, if they needed to work something out, they had a duty to engage in good faith in some sort of interactive dialogue. Like we talked about, she had jobs as a desk job. There's other things that could be done. She said that she could meet with her doctor to talk about doing something else. They just don't get to run roughshod over someone by saying, take your time. He says no good deed goes unpunished. Well, how was it punished? Did they lose their contract? Were there any adverse consequences taken? This is part of that undue burden analysis that hasn't been reached. There was no consequence. Their own corporate policies give people 90 days of leave. If that's going to put them in violation of their contract, why would they have that as one of the things they give their people? And counsel, just to be clear, there has been some discussion that the employer was somewhat under the gun because of his contract. But I take it's your position that that is a separate legal question. That's whether or not there's an undue hardship exception that would allow the employer to take those steps. That's different from whether there is a reasonable accommodation possible here. Absolutely. And that's what the Supreme Court has said. The Supreme Court says if there's a plausibly reasonable accommodation, then the burden shifts to the employer's sake, but it would create an undue hardship. And that's where I think they have the makings of a defense in this case. And that's where the focus should be. As I said to my priest, that's really where the focus should be. This case should be about undue hardship. Because of my contract, because of whatever, can we accommodate? And the district court did not reach that issue, correct? It expressly said it was not going to reach that issue. Could you discuss the retaliation briefly? Sure. And so typically we know that the burdens of proof in these cases on retaliation is that there's an adverse employment decision that is taken. Protected activity. Protected activity. Remember, that was one of the things that they conceded the district court. I think that this is what Judge Bennett was referring to, where the district court said requesting an accommodation is not protected activity itself. And that's absolutely wrong. It was statutorily overturned, right? And they conceded that's true. She got it wrong. The Neely-Roper line of decisions that they cited was actually overturned. So the district court got that wrong. We've all admitted that. And I think that's what the judge was referring to. And so that is protected activity. And so she had two choices when she could either come back to work, right, or she could assert her rights and ask for an accommodation. And that's what she did. She asserted her rights. Did not come back to work. Asserted her rights. Asked for an accommodation, which at least started that interactive dialogue, right? And they fired her because she did that and didn't return to work. And that is the retaliation. So because the district court used an incorrect standard, do you think it would be appropriate for us to remand that for the district court to apply the correct standard? On that particular issue, retaliation, which is one of the claims, absolutely because the court just relied on that and so it didn't get to any of the meat. I do want to talk about the Humphreys decision real quick because it's a huge decision. This is a Ninth Circuit decision. And in this decision, the court said very clearly, the interactive process requires communication and good faith exploration of possible accommodations. And then says, moreover, we have held that the duty to accommodate is a continuing duty that is not exhausted by one effort. And then they go on to say that if a reasonable accommodation turns out to be ineffective, like in this case, that wasn't quite enough, she needed more time, the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be alternative reasonable accommodation. And the obligation to engage in the interactive process extends. And this is very clear. The Humphreys is very clear. Look, even in that case where the woman had a problem, she tried a couple things first. Remember, they didn't work. And so ultimately she said, can I work from home? And they said no. And part of the argument was, we did all these other things already. And the Ninth Circuit said, yeah, they didn't work. And so you still have to assess each request on its own merits. Is it plausible? Is it reasonable? Could it work? And then the question is, if it could, is it an undue burden though? Would there be a problem? And so that's what happened in this case. She just said, I need five more weeks. And she actually, when her conversation with Willie Marshall was like, maybe not even that much. I just need a little more time to get cleared. And they said, no problem. And then they fired her. And there was no duty, nothing. Okay, thank you. Thank you very much. Thank you both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: Rawlinson, Owens, Bennett